Good morning, your honors. May it please the court, John Hannes for Appellant Michael Mirando. I'm joined at council table by my co-counsel, James Spertus. We're asking the court to reverse the guilty verdicts and also, at the very least, remand for resentencing in this case. Now, we raise both trial and sentencing issues in our brief. I'd like to start with the sentencing issues. Specifically, and I think the sentencing issues are all fairly similar in that they deal with the enhancements and also the lens through which the trial court implied the enhancements. So the first enhancement, the largest enhancement in this case, dealt with loss. And the district court found that Mr. Mirando intended to cause $8.4 million. Before we get to that, could you talk to us for just a moment about whether the district court employed the correct standard in determining this issue because there seems to be some conflict between which standard, whether he was applying a preponderant standard or, you know, I think at one point he said he used another standard. So would you tell us what your position on that is? Certainly, Judge Marbley. So the district court sentencing counsel raised the issue that the clear and convincing standard applied because of the disproportionate impact of all of the enhancements. We're starting with a base offense level of 6, but at the time we get the time the court sentences Mr. Mirando, he's sentenced at a total offense level of 30, which is a five-fold increase. Now, I'll acknowledge certainly that the court used the words clear and convincing. Twice.  The court also stated, Your Honor, that Specifically in reference to the amount of loss. So even assuming that it's clear and convincing instead of preponderance, isn't that satisfied here? I don't think it is, Your Honor, and here's why. First of all, the court also said preponderance, the preponderance standard applies in a case like this. The court very clearly said that. Now, the court also made no real distinction between clear and convincing and preponderance, and I think that's where the problem lies. And I think, I don't think you can insulate that finding from appellate review just by saying those words. The court made no effort to distinguish those two standards. But going back to the loss issue, so it's clearly, it's the government's burden to prove loss. The court found that $8.4 million was the intended loss. Mr. Miranda testified at sentencing, unrebutted testimony at sentencing, that he never intended to receive $8.4 million. Does the court have to accept that? Well, I think there's nothing, there's no weighing because there's no evidence on the other side. So the government certainly did not question Mr. Miranda at sentencing, even though he testified. But there's a question of credibility. Do you agree, first of all, that the $8.4 million is the presumptive intended loss? I would agree that it is the prima facie. It's the prima facie loss amount, but that the parties are – The court both instructed it's the presumptive amount, as Judge Cook suggests. Well, I think what Popov and the other courts say is that parties, either party, may submit evidence to the court to show that that amount either overestimates or underestimates the defendant's intent. Let me have you address a couple of points in the record. The court said there's no credible evidence to support the defendant's assertion that the total amount billed overestimated his intent. So to me, that's a factual finding, rejecting the defendant's statement that he didn't intend the loss to be the full amount. So that one portion of the record I think is troubling for your case to me. The second part is that at one point, I don't know if it was counsel or the court, asked him, well, if the insurance had paid out, would you have kept it? And he says, probably, or something along those lines. So that's affirmative evidence of intended loss. How do you address those two pieces of evidence in the record? That finding and then that piece of evidence from his testimony? So I'll address those in turn. First of all, right, the court's correct. That was the court's ultimate finding. But I would address – I would ask the court to look at ER 18, which is the court's statement prior to Mr. Miranda's testimony, and that the court says that Mr. Miranda did not submit a declaration prior to sentencing regarding his understanding of reimbursement, and that any such declaration, at least in my view at this point in this case, hardly seems credible. So we're starting sentencing. That is the court's position before Mr. Miranda ever testifies. But after Miranda testifies, the court, as Judge Wynn points out, did ask him if he would have kept the 8.4, and he said, yes, probably. So that's his own testimony. I understand that, Your Honor, but I think that there is more to that testimony. And I think what Mr. Miranda goes on to say is that essentially that's an impossibility, that that never happens, that reimbursement rates are 25% to 30% of billed amounts. And I would note that the restitution amount in this case, which we have issues with and which we've raised issues with in our brief, is $3 million. So if you look at the amount that was actually reimbursed as opposed to the intended loss of $8.4 million, that is certainly in line with Mr. Miranda's testimony about expected reimbursement. And certainly courts around the country pop off, recognize this. Singh in the Second Circuit, Izzueldi in the Fifth Circuit, Natcheme in the Southern District of New York, all of these courts recognize that reimbursement rates are significantly less than billed rates because of the contracts, because of the way that these contracts are written. Is there a disconnect between reimbursement rates and intent? Because we're dealing with the question of intent here. How much did he intend to defraud the program? Well, Mr. Miranda testified that he intended to receive 25% to 30% of the billed amounts. He testified to that. Well, another way to look at it is he intended to maximize the loss and whatever he could recover, he was going to keep. So in light of that possible, plausible, reasonable interpretation, however you want to state it, which is the way the district court looked at it, can we say that that's a clearly erroneous finding or an unreasonable way to interpret that evidence? Your Honor, I think especially in light of—I think it is unreasonable, and I think especially in light of the fact that the court went into sentencing with this position and that basically anything that Mr. Miranda said at sentencing would not be believed. Now, Mr. Miranda did not testify at trial, so this is not a—we're not in a universe in which someone— Is your argument, then, that somehow the district court was biased and that bias infected the evaluation of the evidence? Is that what you're saying? I think the district court viewed sentencing through a trial prism, and I think Hernandez, the case of this court that came out last year, said that you can't do that, that sentencing, the trial—they're not either-or propositions. So I think—I do think that the court looked at everything that was presented through the trial lens, and I think Hernandez is clear that you cannot do that. So, again, this testimony, and I would refer the court, Mr. Miranda's testimony is at ER 29, 31, 32, and 33. Those are all under oath. So he initially started to speak to the court. The court then put him under oath, and Mr. Miranda answered and testified and certainly answered the court's questions. So what do you do with the credibility finding? I think the credibility finding is not due deference by this court. Again, because of the statements of the court at the outset of sentencing, where the court clearly indicated that it would not credit Mr. Miranda's testimony. Now, counsel, prior to sentencing, submitted a declaration, indicated that Mr. Miranda would testify regarding his understanding of the reimbursement rates. This court—that district court took trial counsel to task and apparently expected that all of the evidence would be presented prior to sentencing rather than at sentencing. But the court knew—the court was on notice that Mr. Miranda would testify and generally what he would testify to. So I think the court's findings regarding his intent— the court's findings really occurred prior to Mr. Miranda's testimony. So before sentencing, there was a heads-up to the district court that he intended to testify as to loss? There was, Your Honor. There was, Your Honor. And I will—I'm hoping to reserve three minutes for rebuttal. I will have the ER cite. We've certainly cited it in our brief. I will have the ER cite for the court at that time. But this was not—this was an issue that was raised by sentencing counsel prior to— That's all right. I don't want to take up your time. We can look it up. Okay. The other issue I'd like to address, unless there are more questions on the loss issue, it's really the sophisticated means issue. The court applied a two-level enhancement for sophisticated means because of the use of other companies, and that the unrebutted evidence at trial, which actually came out from the agent, Agent Kennedy in this case, was that the co-conspirator— that this business was not hidden from the co-conspirator. And actually that there was no— I don't think there's any evidence that this was— that this business had any nexus to any of the fraud in this case. So I think the court was in error for applying that enhancement. Can I— Was that an abuse of discretion, the fact that he used the Shell Corporation? Didn't he borrow some of the money there? There's certainly evidence, Your Honor, that money was transferred from Holter Labs, the main company, to that company. But then the evidence is that—and the agent testified to this effect— that the funds were then transferred from that corporation to Mr. Miranda and also to the co-conspirator, Stanton Crowley. So it was set up to move some of this money and to conceal some of this money. I don't think that's the case, Your Honor, and here's why. Put it differently. It was set up so that it would make it more difficult to follow the money. I don't think that's the case, and here's why, Your Honor. So the account was set up in Mr. Miranda's— that business was set up in Mr. Miranda's name. The transfers were—there was no—there was nothing to be hidden, quite honestly. There were no—it was just—it was a pass-through company, and it had—the reality is it had no nexus at all to the fraud scheme. So I will reserve my remaining time for that. Let me see if Judge Gould has any questions before you sit down. Judge Gould? Yes, I have no questions here. Thank you very much. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Michael Friedman for the United States. The district court applied the correct standard, and it did not clearly err in its factual determination. Which standard did it apply? It applied the preponderance standard, and it then found based on clear and convincing evidence. So that clear and convincing finding was correct and was not clearly erroneous. But even if it had simply been preponderance of the evidence, it would have been sufficient. And so the district court correctly noted, as this court has held in Popov, which is a health care fraud billing case, it is a preponderance of the evidence standard when it's based on a health care fraud scheme. The clear and convincing finding here was amply supported by the record, as the district court noted in detail, and as is supported by the PSR, as well as all the facts in the record. So under either standard, in other words. Well, in this case, the jury only found that $8.4 million was billed. There was nothing. I mean, Popov talks about the presumption, but it's a rebuttable presumption. And the defendant took the stand, and he said what is basically true, that you never get 100% of what you bill. He didn't expect to get 100% of what he billed. And so where is the clear and convincing evidence? The clear and convincing evidence that the district court was focused on was what was the loss amount. And the loss amount, the billed amount, was $8.4 million. Then the question is, is that $8.4 million the proper measure of the defendant's intent? The district court didn't make any clearly erroneous findings in finding that that was the defendant's intent because the defendant failed to rebut the presumption, in large part because the district court correctly found that the defendant lacked credibility. So why then didn't the district court make the $8.4 the amount of restitution? Because the $8.4 million was the billed amount, and there's no dispute that the defendant didn't receive that entire amount. And so the amount that the defendant received through the fraud, which is the amount, the $3 million, is the restitution amount. But for sentencing purposes, the intended amount, the intended loss, is the billed amount as a prima facie standard unless it's rebutted. Yeah, and that's my point. He offered evidence to rebut it, and why can't we look at the fact that he was paid $3 million, which pretty much supports his view of what he expects to receive and supports the view of what happens in health care financing reimbursement all the time every day around this country. So why should we use sort of a theoretical imaginary paradigm that doesn't exist except for in our imaginations that you're going to get 100 percent of what's billed? I think, first, this Court's precedent, Popov and then Walter E. Z. more recently, does employ that standard. You start out with what Your Honor has termed this hypothetical theoretical. That is the starting point under this Court's precedent. Which is why Popov made it a rebuttable presumption as opposed to an irrebuttable one. And then in this case in particular, as Your Honor, Judge Marbley, you've noted already, the defendant's own words make clear what his intent was. He intended to receive as much as he could have. He would have kept more if he had been paid more. And so in this case, on this record, that's clear. And under a long line of cases in this Court and others, it doesn't necessarily matter that it's impossible to receive the billed amount. If that's what the defendant billed, it's the presumptive standard. And if the defendant fails to rebut it, it remains the standard. And here, the defendant obviously failed to rebut it because he actually confirmed it with his testimony. Now, I don't want to hang... There's a problem. He's credible when he says that if you had paid me $8.4 million, I would have kept it. He's not credible when he says, and this is supported by, you know, the reality of health care financing, that he wasn't going to get the $8.4 million, and he knew it. And he, in fact, didn't get the $8.4 million. So why can't this Court believe that, or why couldn't the district court believe that, as opposed to just believing that which would support the harsher sentence? A few reasons. First of all, the district court's comments regarding credibility, which it noted at the beginning, were in light of the arguments that had been made at trial. And this particular defendant was not a doctor. He was a salesperson. And so there was an argument at trial that he wasn't experienced in billing and that that was somehow a defense to all of this fraudulent billing. And so the district court's initial comments that opposing counsel noted weren't a blanket finding that there couldn't be any credibility, simply that going into sentencing, there was no credibility to the new argument that counsel had previewed. And I believe there was a question as to where that was previewed. It was at ER 82, where defense counsel said in his serve reply, Mr. Miranda will address this issue at sentencing and here's what he's going to say. And then counsel started at the hearing at ER 14 and ER 20 by saying again, essentially previewing what Mr. Miranda was going to say. And the court properly noted that that didn't seem particularly credible because it was contrary to what had been argued at trial. And at least as of that point at the beginning of the hearing, the defendant hadn't been heard from. So the court obviously didn't make that a blanket credibility determination because the court then heard testimony from the defendant. And I don't want to hang the hat completely on the fact that the defendant admitted to the full intent because the other ways that the defendant tried to rebut this presumption were also woefully deficient. The expert report, which was the primary basis in the sentencing argument, it went so far as to say that the methodology used by the government to arrive at the $8.5 million loss amount lacked credibility so far to suggest that the insurance companies actually owed the defendant $1.5 million. After a week-long trial where the jury convicted the defendant in about 30 minutes, the district court was absolutely correct to find that that report lacked credibility. And so before the hearing and at the hearing, the district court gave the defendant every opportunity to go through this process of trying to rebut the presumption and properly found at each step of the way that he failed to do so. And therefore, in this particular case, under this court's precedent, the intended loss amount was the correct amount, the billed amount to use for sentencing purposes aside from the restitution question. If the court has further questions on the intended loss amount, I'm happy to address them. Otherwise, I'll turn in the remaining time to the sophisticated means and any other issues the court has questions about. Counsel, Judge Gould on the phone. Yes, Judge Gould. I have trouble with my phone here, but if you can't hear me, just let me know. I can hear you for the most part. Okay, good. Here's my question. A person could be frequent or a liar, not credible on everything, but still be credible. They said the sky is generally blue on a clear day or storm clouds are dark. I'm having trouble understanding why this shouldn't be believed as that the federal agency involved won't normally pay 100% of what's billed. That seems to be common knowledge, thus supported by the out of the institution award. Your Honor, the evidence in this case actually supported the defendant's trial argument, which is that he was not particularly experienced in billing. The cross-examination of the cooperating witness, his former business partner Crowley, Crowley explained that Crowley was the one at the start of the business who knew about billing. The defense's argument, in fact, was correct to that extent, that the defendant of the two was not experienced with billing and was unsophisticated in billing. This is actually a case where he didn't have the evidence at trial made clear that this was not a defendant who had the sort of experience that you would assume for a proper foundation to make that statement of the 25 to 30% knowledge, which was one of the reasons the district court was skeptical. The defendant at sentencing, as well, continued to deny culpability by explaining, well, if I had known that this was somehow improper, which is, in other words, implying that he didn't know exactly about the billing. He said, if I had known this was improper, I wouldn't have billed this way. This is in contrast to a case like Popov or to the Second Circuit case, Singh, where there is some foundation for the medical professional or the doctor being intimately familiar, as one of the cases puts it. This is not that case. The defendant's trial argument was correct, that he was inexperienced, that he didn't have any foundation upon which to make these claims. And the way they came about at sentencing was essentially defense counsel previewing that the defendant was going to come in and say what seemed to need to be said under this court's precedent to rebut the presumption. And the district court correctly noted at the outset, that doesn't seem like it's going to be credible. Then heard the testimony, nonetheless, and made a credibility determination that, in fact, it wasn't credible because there was no foundation. And the expert report, likewise, doesn't speak to the defendant's knowledge. It speaks to the industry standard in general that Judge Gould noted, but no connection to this defendant's knowledge. So in every regard, the district court correctly determined and didn't clearly err in its factual determination, and therefore didn't abuse its discretion in finding that the presumption wasn't rebutted and the billed amount was the correct amount for intended loss. Likewise, the district court didn't abuse its discretion in applying the sophisticated means enhancement. As Judge Marbley noted, the Murrieta Medical Supply Shell Corporation was set up to make it more difficult to follow the money. And the testimony at trial proved that because the way this fraud went on for approximately 12 years, and Crowley, the government's witness, the former business partner, only discovered it towards the very end. And the way he discovered it was by following the money. He became suspicious about the amount of money that he was receiving versus how much the defendant was making. He looked into the billing records. He saw that money was going to bank accounts that he didn't know of, including the Bank of the West account, which is one of the accounts that was funneled into through this Murrieta Medical Shell account. So that falls squarely within the case law approving of this enhancement. When counsel suggests that there was nothing to be hidden, that's contrary to the evidence that was adduced at trial because the defendant was hiding the proceeds of the fraud from his business partner in order to hide the fraud. The whole point of having this separate account within the scheme of the fraud was to prevent the fraud from being discovered. The other purpose was for Defendant Miranda, as the FBI case agent, testified and walked through the financial records at trial. The other purpose was for Defendant to use that money for his own purposes, to invest in real estate around the country and to spend that money on his own personal living expenses. Now it's true that Crowley was at times paid out of that account, but as was clear at the trial, Crowley was not a particularly sophisticated business person and therefore the way that the defendant used Murrieta Medical was primarily to conceal the fraud from Cowley. And that's demonstrated best by the fact that exactly that is how Crowley found out about the fraud, by tracing the money. And so this fake business and its bank account was used to hide the fraud and it worked to hide the fraud for a number of years. And that's exactly the sort of case where this court and others have applied this enhancement and found that there was no abuse of discretion. And so with respect to any of those sentencing issues, the District Court's factual findings were not clearly erroneous and it didn't abuse its discretion. There's other issues that I'm happy to address if the court has any questions in the remaining minute, otherwise the government would submit on those issues on its brief. Thank you, Counsel. Thank you very much. Thank you. I just want to address a couple of the points the government made just to clarify my earlier presentation. Just to be clear, this was not a conspiracy case. The jury did not find that $8.4 million was built. The loss amount found by the jury, or the counts resulting in a loss amount found by the jury, were approximately $10,000. So we went from $10,000 at trial to $8.4 million at sentencing. I just want to make clear that that... Under your loss calculation as opposed to the government's, it would be a difference of how many levels? Two? Well, I think the loss calculation is unclear for the reasons cited in the expert report. So we don't accept that the loss in this case would have been $3 million. There was no effort made to... The expert report made clear that the government's standards regarding dates of billing... Well, that's what we wanted to clarify, because if $8.4 is the presumptive and the defendant's testimony were to be accepted, that insurance companies usually pay a third of that, then I wanted to clarify whether your position would be to take that testimony and do that math. Well, I don't think... So I think that it's clear that that was the paid amount, but I don't think it reflects... I don't think all of that amount was fraudulent, I guess is what I'm trying to say. And I think the expert report makes clear... I see I'm almost out of time. I'm over time, but I think the court just dismissed the expert report, saying that it was inconsistent with the evidence that was produced... that was presented at trial, which, again, we have the court looking at all of the sentencing issues through this trial prism. And Hernandez is very clear that the court cannot do that, that those are separate issues. All right. Thank you. Thank you. Judge Marbley, any questions? Thank you. Thank you.
judges: Gould, Nguyen, Marbley